## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**ALLEN TONY DAVIS**,

        Plaintiff,

                                        **Case No. 14-cv-1413-pp**

    v.

**JAMES GREER,**

        Defendant.

---

### DECISION AND ORDER GRANTING THE DEFENDANT'S
### MOTION FOR SUMMARY JUDGMENT (DKT. NO. 39)

---

Plaintiff Allen Tony Davis is an inmate at Green Bay Correctional Institution (GBCI). On May 15, 2015, the court screened the plaintiff's third amended complaint under 28 U.S.C. §1915A and permitted him to proceed on an Eighth Amendment deliberate indifference to a serious medical need claim against the defendant. Dkt. No. 15. On June 30, 2016, the defendant filed a motion for summary judgment. Dkt. No. 39. That motion is fully briefed and ready for the court's decision.

### I.    FACTS[1]

The plaintiff is suing James Greer, who works for the Wisconsin Department of Corrections (DOC) as the Director of the Bureau of Health

---

[1] The court takes the facts from the "Defendant's Proposed Findings of Fact." (Dkt. No. 41). It takes additional facts from the plaintiff's declaration. (Dkt. No. 48.) The plaintiff failed to respond the defendant's proposed facts, so those facts are deemed admitted for the purpose of deciding summary judgment. Civ. L. R. 56(b)(4).

Case 1:14-cv-01413-PP   Filed 12/30/16   Page 1 of 8   Document 51

Services within the Division of Adult Institutions. Dkt. No. 41 ¶2. The court allowed the plaintiff to proceed on a claim that the defendant was deliberately indifferent to the plaintiff's serious medical needs when the defendant revised the DOC's mattress policy to prohibit inmates from using double mattresses. Dkt. No. 15.

The plaintiff states that, on September 22, 2005, while he was incarcerated at the Wisconsin Secure Program Facility, Dr. Cox Burton prescribed an extra mattress to treat pain caused by the plaintiff's degenerative joint disease. Dkt. No. 48, ¶3. At some unspecified point, the plaintiff was transferred to GBCI. Id. On June 25, 2008, Dr. Heidorn prescribed an extra pillow and an extra mattress for the plaintiff. Id.

Sometime prior to 2009, a committee consisting of health services unit managers, health services nursing coordinators, and health services directors began to evaluate Health Services Policy 300:07, which deals with the special needs of inmates, including inmate requests for extra mattresses. Dkt. No. 41, ¶7. Although the defendant approved the final policy, he was not on the committee that evaluated and revised the policy. Id. ¶14.

In the course of evaluating the policy, Holly Gunderson, who was a member of the committee, began to evaluate the quality of the mattresses. Id., ¶13. She learned that the mattresses the inmates used were thin and broke down over time, resulting in many inmate requests for a second mattress to provide additional support and comfort. Id. at ¶30. Based on her research, the DOC decided to purchase different mattresses, commonly referred as blue or

2

black mattresses, that were thicker and did not break down over time. Id. at 31. The DOC did not replace all of the old mattresses at one time; it did so over a period of years as the old mattresses wore out. Id. at ¶30.

Following the decision to purchase thicker, longer-lasting mattresses, the committee decided that it was generally unnecessary to allow inmates to double up on their mattresses for added support and comfort. Id. at ¶32. As a result, they recommended that the policy be revised, in part, to state, "Double mattresses should not be used. Use thick mattresses only. Black or navy blue mattresses are considered thick mattresses. Double thick mattresses are not allowed." Id. at ¶36. While the policy prohibits inmates from having two mattresses, specialized mattresses, referred to as "medical mattresses," which are made of alternate material and with additional thickness, may be provided to an inmate who can demonstrate a medical need. Id. at ¶37. The plaintiff does not state that he has been approved for a medical mattress. See Dkt. No. 48 ¶7.

On July 27, 2009, the defendant, along with other individuals who are not defendants in this lawsuit, approved revised Health Services Policy 300:07. Dkt. No. 42-1 at 5.

The plaintiff alleges that on April 24, 2011, some unnamed person removed his extra mattress and pillow. Dkt. No. 48, ¶5. He did not learn until much later that they had been removed pursuant to the revised policy. Id. The plaintiff states that from 2011 to the present, he has had only one mattress and has not received a newer, thicker mattress. Id. at 6.

3

## II.    DISCUSSION

### A.    Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

4

B.    The Eighth Amendment Standard

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.'" Gutierrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997). This standard contains both an objective element (that the medical needs be sufficiently serious) and a subjective element (that the official act with a sufficiently culpable state of mind). Id.

C.    The Court's Analysis

The defendant concedes for purposes of deciding summary judgment that the plaintiff suffers from an objectively serious medical condition because he has degenerative joint disease in his back. Dkt. No. 40 at 8. The court will focus its analysis on the second element of the deliberate indifference standard—namely, whether a reasonable jury could conclude that the defendant acted with deliberate indifference to the plaintiff's medical needs when he approved a policy prohibiting inmates from possessing two mattresses.

The plaintiff argues that the defendant knew the revised policy would interfere with orders from doctors prescribing double mattresses for inmates like the plaintiff. The court finds that, even after drawing all reasonable inferences in the plaintiff's favor (as he is the non-moving party), no reasonable jury could conclude that the defendant was deliberately indifferent to the plaintiff's medical needs.

First, prior to the policy being implemented, the DOC addressed the lack of support and comfort associated with the old mattresses by approving the

5

purchase of new mattresses that were thicker and lasted longer. In the opinion of the policy committee, which consisted of medical professionals, the new mattresses were equivalent to two of the older mattresses. By deciding to replace the old mattresses, the DOC eliminated the reason doctors had been prescribing double mattresses (i.e., because one old mattress did not provide adequate support or comfort).

Second, to the extent that the new mattress was inadequate to address a particular inmate's need, the policy the defendant approved allowed such an inmate to obtain an even thicker medical mattress upon a showing of medical necessity. The plaintiff concedes that, although he has tried to obtain a thicker mattress (i.e., a medical mattress), he has not been able to. The defendant, however, had no involvement in whether a medical provider did or did not recommend that the plaintiff be provided a medical mattress, and the defendant can be held liable only for his own decision, not for the decisions of others. See Zentmeyer v. Kendall Cty., 220 F.3d 805, 811 (7th Cir. 2000).

Finally, at first blush, there appears to be some confusion about whether the plaintiff ever received a new mattress or whether, when his second mattress was removed, he was forced to sleep on a single old mattress. On March 13, 2015, the plaintiff filed a sworn seconded amended complaint in which he stated, "GBCI security officials took the plaintiff[']s extra three (3) inch black or navy blue mattress from him." Dkt. No. 9-1, ¶15. As noted by the defendant, the old mattresses were pink, and the new mattresses are navy blue or black. Dkt. No. 41 ¶30, 31. Thus, it appears that, when the plaintiff's extra

6

mattress was removed (two years after the defendant approved the policy), he was sleeping on two of the *new* mattresses, not on two of the *old* mattresses. It is not clear why GBCI allowed the plaintiff to have two of the new mattresses—that is expressly prohibited by the policy—but, whatever the reason, it is irrelevant to the plaintiff's claim against the defendant.

The defendant knew that the DOC intended to provide new, thicker, longer-lasting mattresses to eliminate the need for inmates to have two thin, worn-out mattresses. Further, he knew that the policy allowed inmates to obtain an even thicker medical mattress in the event the new mattress did not adequately address their medical needs. Based on this, no reasonable jury could find that the defendant acted with deliberate indifference when he approved the policy that resulted in the removal of the plaintiff's second mattress.

## III.  CONCLUSION

The court **ORDERS** that the defendant's motion for summary judgment (Dkt. No. 39) is **GRANTED**.  The clerk of court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 30th day of December, 2016.

BY THE COURT:

_____

HON. PAMELA PEPPER
United States District Judge